IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SEAN KENSINGER,

    Plaintiff,

  v.

PAUL CRAFT, individually and in his capacity as an officer for the California Highway Patrol, and JEFFREY GOODWIN, individually and in his capacity as an officer for the California Highway Patrol,

    Defendants.

No. C 11-00885 WHA

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT, AND VACATING HEARING**

## INTRODUCTION

In this excessive-force action, defendants move for partial summary judgment. For the reasons stated below, the motion is **GRANTED IN PART** and **DENIED IN PART**. The motion hearing scheduled for June 6 is **VACATED**.

## STATEMENT

This action arises out of plaintiff Sean Kensinger's arrest in December 2009 for driving under the influence. Kensinger's criminal charge went to trial in March 2011 but resulted in a mistrial with the jury hanging. *People v. Sean Kensinger*, Superior Court for the County of Humboldt, Case No. CR1002750C. Kensinger filed this civil action in February 2011 and alleges that during his arrest, defendant Officers Paul Craft "and/or" Jeffrey Goodwin used excessive force by repeatedly striking and kicking Kensinger. The parties' factual account of the arrest drastically differ, as discussed below.

On the night of the arrest, Kensinger was stopped and ordered to exit his car by Officer Craft. After Kensinger was searched, he was instructed to put his hands behind his back. The remaining facts are disputed.

According to Kensinger's testimony at his criminal trial, Officer Craft struck Kensinger's arm with a baton without provocation, yelling "hands behind your back!" (Higa Decl. Exh. A at 312–14). As Kensinger was grabbing his arm in pain, Officer Craft struck him again without provocation (*id.* at 314). As Kensinger began falling to the ground after the second strike, Officer Craft hit him a third time — this time a blow on the shoulder and head (*id.* at 314–18). As Kensinger was laying on the ground, he was kicked on his right side but did not see by whom (*id.* at 324).

According to defendants, Officer Craft did not hit Kensington nor use his baton during the arrest (Craft Decl. ¶¶ 5–10). As will be discussed in more detail below, Officer Goodwin, who arrived at the scene later, put Kensinger to the ground because Kensington was "yelling and gesturing" (Higa Decl. Exh. F at 82–84). Officer Goodwin did not hit Kensinger with a baton (Lo Decl. Exh. D at 191).

Defendants move for summary judgment of all claims against Officer Goodwin. Defendants also move for summary judgment on plaintiff's claim of emotional distress and recovery of lost income.

**ANALYSIS**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). An issue is genuine only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and material only if the fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

"[Section 1983] claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989).

2

> Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake . . . . [T]he reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them.

*Id*. at 396–97 (citations omitted). This analysis must take into consideration "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396.

Under California law, arrestee's claim for assault and battery against officers requires proof that the officers used unreasonable force in making a lawful arrest or detention. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001); *see also* CAL. GOV. CODE § 820.2.

### 1. OFFICER GOODWIN.

Kensinger testified at his criminal trial that Officer Goodwin did not arrive on the scene until at least twenty minutes *after* his arrest by Officer Craft began (Lo Decl. Exh. D at 191). In fact, Kensinger testified that Officer Goodwin never hit or kicked him (*id*. at 191). Officer Goodwin arrived at the scene after Kensington was allegedly kicked by an unknown officer (*id*. at 324). This is worth repeating. Kensinger's own testimony at his prior criminal trial was that Officer Goodwin did not hit or kick him because Officer Goodwin arrived only after Officer Craft's alleged use of excessive force (*id*. at 191). Kensinger's complaint about Officer Goodwin's conduct was that "he would repeat back things I didn't say and said I said them" (*id*. at 192). Kensinger's account of events is insufficient to support a reasonable inference that Officer Goodwin used excessive force during his arrest.

In his opposition brief, Kensinger argues that Officer Goodwin's own testimony raises a genuine dispute about whether his conduct was reasonable. At Kensinger's criminal trial, Officer Goodwin testified that he saw Kensinger yelling and gesturing at Officer Craft. Officer

3

Goodwin wanted to gain control of the situation quick because the number of arrestees outnumbered the number of officers three-to-two. Officer Goodwin decided to "put Kensinger on the ground":

> I used the momentum that I had from running out of the patrol car to effectively take him off balance and put him on the ground in front of me [using my hands on his shoulders] and he landed on his stomach. . . . . He turned, I guess, from a flat, proned position with his left hand (demonstrating) and right hand, turned over and faced where I was standing . . . he turned on me and he extended his arms towards my location or towards my face, essentially, and began flailing his arms (demonstrating) and in order to create a distance or maintain a distance, safe distance, to avoid injury or to avoid a situation to where I was pulled down on to the suspect, I utilized my hands to deflect his arms away from me so that he couldn't effectively gain control of me and pull me down on top of him.

(Higa Decl. Exh. D at 82–85; *see also* Higa. Decl. F at 69–85). Even construing Officer Goodwin's testimony in the light most favorable to Kensinger, it is insufficient to raise a genuine dispute that Officer Goodwin's conduct was unreasonable, let alone find that it was outrageous.

Kensinger's Section 1983 and state-law claims are all based on an unreasonable, excessive use of force. Because there is insufficient evidence to show that Officer Goodwin's conduct was unreasonable, Kensinger's Section 1983, Bane Act, assault, battery, intentional infliction of emotional distress, and negligence claims against Officer Goodwin are all dismissed. To sum up, defendants motion for summary judgment as to Officer Goodwin is **GRANTED**.

2.  **WAGE / BUSINESS INCOME LOSS.**

Kensinger claims past, present, and future wage loss as special damages in this action. In his interrogatory responses, Kensinger stated that he was a self-employed, one-man operation providing landscaping services (Higa Decl. Exh. E at Nos. 20, 23). Because his clients usually paid in cash, Kensington kept track of his revenue by using his monthly bank deposits (*id.* at No. 21). Kensinger stated that the amount of income loss due to his incapacitation from the alleged use of excessive force was approximate $11,000. He explained:

4

> This amount is calculated using a review of Plaintiffs [sic] bank account statements identifying a depletion of both accounts totaling in roughly that amount. The $11,000.00 reflects only those out-of-pocket costs Plaintiff was unable to avoid due to payment of workers to compensate for his inability to work, as well as out-of-pocket costs associated with costs of living — even though he was stripped of practically any-and-all income because of his officer-inflicted injuries. Further review of earlier business account entries illustrates a business which, in the 7 months prior to subject incdient, earned an average of $3,000.00 per month in account receivable which Plaintiff could no longer pursue in the short term because of his 6 month period of injury and recovery.

(Lo Decl. Exh. C). Kensinger also produced his prior tax returns in support (Defendant's Reply Br. 11).

Defendants argue there is insufficient evidence of wage loss or loss of business income. This argument is rejected. Although Kensinger's evidence of loss wages is not precise, there is sufficient evidence for the purposes of summary judgment to raise a genuine dispute as to lost wages. The amount of loss will be a factual matter for the jury to decide.

### 3. EMOTIONAL DISTRESS.

Intentional infliction of emotional distress requires "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007). Defendants argue that Kensinger's claim of emotional distress must be dismissed because he did not suffer severe emotional distress.

Kensinger has provided evidence that he suffered from "significant anxiety when in the presence of law enforcement," "extreme distrust of law enforcement," and "anxiety, rage and fear over the [] incident." (Higa Decl. Exh. E at No. 2). He also described physical manifestations such as "recurring nightmares and restless sleep because [he] cannot control [his] anxiety over what happened," and "remain[ing] bedridden for periods of days, incapacitated

5

because of [his] anxiety, rage, and fear over the []incident" (*id.*). Viewed in the light most favorable to Kensinger, this is sufficient to show severe emotional distress.

Defendants argue that they are entitled to summary judgment because their psychiatrist, Dr. Emily Keram, testified that Kensinger's distress arises out of his perception of dishonest police, not out of the alleged use of excessive force during the 2009 incident (Keram Decl. ¶¶ 2–3). This testimony only raises a genuine dispute as to whether the allegedly unreasonable conduct by Officer Craft was actual and proximate cause of his distress. This is a factual question for trial.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims against defendant Officer Jeffrey Goodwin are **DISMISSED**. The motion hearing scheduled for June 6 is **VACATED**.

**IT IS SO ORDERED.**

Dated: June 1, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE